# CITY OF JOLIET

## v.

## MARY A. SHUFELT.

*Municipal Corporations—Highways—Changes in—Personal Injuries.*

1. It is the duty of a municipality changing a safe existing highway to do so in such manner as to leave the same reasonably sufficient in width and method of construction to answer the purposes of a public way under all ordinary conditions and in view of ordinary accidents. If it can not make such highway reasonably safe after a change, it should forbear to make it.

City of Joliet v. Shufelt.

2.  If a person while observing due care for his personal safety be injured by the combined result of an accident and the negligence of a city or village, and the injury would not have been sustained but for such negligence, yet, although the accident be the primary cause of the injury, if it was one which common prudence and sagacity could not have foreseen and provided against, the negligent municipality will be held liable for the injury.

3.  The running away of a horse is an ordinary accident.

[Opinion filed December 7, 1891.]

APPEAL from the Circuit Court of Will County; the Hon. CHARLES BLANCHARD, Judge, presiding.

Messrs. J. W. DOWNEY, City Attorney, and J. L. O'DONNELL, for appellant.

If this plaintiff can recover in this case, then all cities are insurers against accidents. We do not deny that if a person passing over a street on the edge of a high bank slips or trips or is accidentally jostled by a passer-by and falls over the bank for want of a wall or railing, the law holds those charged with the care of the street responsible. Such is not this case. If plaintiff can recover in this case, then a pedestrian walking beside a five foot wall or bridge railing in a city, who is seized by a maniac, lifted into the air and hurled over the wall into a pit or river can recover from the city. We know of no authority which holds the city liable for the result of extraordinary accidents. Our Supreme Court has said : "A municipal corporation is not liable for every accident that may occur within its limits. It would be a most ruinous rule to adopt. Its officers are not required or expected to do every possible thing that human energy or ingenuity can do to prevent the happening of accidents or injury to the citizen. When they have exercised a reasonable care in that regard, they have discharged their duty to the public." Centralia v. Krause, 64 Ill. 19.

In Brown v. Mayor of Glasgow, 57 Mo. 156, it is said : "It would certainly be a most unreasonable demand to require the corporate authorities of a city not only to provide safe

and commodious streets for all ordinary purposes of travel, but to provide thoroughfares of such ample dimensions and such matchless grade, that accidents even from runaway teams would be absolute impossibilities."

Again the Supreme Court of Illinois has said: "As we had occasion to say in another case, a municipal corporation is not liable to damages for every accident that may occur within its limits. It would be a most ruinous rule to adopt. Its officers are not required or expected to do everything that human energy or ingenuity can do to prevent injury to the citizen. When they have exercised reasonable care in this regard they have discharged their whole duty to the public." Joliet v. Seward, 86 Ill. 402.

In another case, after laying down the rule that it is the duty of a city to so construct its streets that they shall be safe for all ordinary travel, and that, failing in this duty, it will be liable if a compliance with such duty would have prevented the injury, this court says: "Of course, if a railing sufficient to secure ordinary travelers from injury by being thrown over the embankment, in consequence of any accident or mischance incident to the use of the street in an ordinary manner, and which are liable to occur without the fault of those traveling thereon, would not have prevented the horse of appellee from going over the embankment wall, because of his violent conduct at the time, the city should not be held liable, although there was no railing, for in such case it could not be said that the defect caused the injury." Rockford v. Russell, 9 Ill. App. 229.

The rule recognized in this State as to the liability of cities and based upon Joliet v. Verley, 35 Ill. 58, does not conflict with the well established principle that if the accident be itself the proximate cause of the injury and the city is not responsible for the accident, no recovery can be had. Rockford v. Tripp, 83 Ill. 247, approving Marble v. Worcester, 4 Gray, 395.

"The damages to be recovered in an action must always be the natural and proximate consequence of the wrongful act complained of.

"If a new force or power has intervened sufficient of itself

to stand as the cause of the mischief or injury, the first must be considered as too remote." Schmidt v. Mitchell, 84 Ill. 195.

We submit that the street was in a reasonably safe condition and the runaway was the proximate cause of the injury, and therefore the verdict is contrary to the law and the evidence.

It will be seen from the evidence that the question was sharply presented in the trial of this case as to whether or not the running away of the horse was an ordinary accident within the rule of law, and therefore not to be treated as the cause of the injury, or was an extraordinary accident and the proximate cause of the injury.

Plaintiff in her declaration alleged that by reason of the condition of the street, etc., she was injured. This allegation is equivalent to one that the defect in the street and no other cause produced the injury. May v. Princeton, 11 Met. 442; Marble v. Worcester, 4 Gray, 395; and this latter case as before noticed is approved in Rockford v. Tripp, 83 Ill. 247. In this case it was clearly a question for the jury as to whether the accident in question was an ordinary accident or otherwise. The court had no right to decide from the evidence what was the character of the accident nor to what extent it was or was not the cause of the injury. Rockford v. Russell, 9 Ill. App. 235.

Messrs. GEORGE S. HOUSE and SHUMAN & DEFREES, for appellee.

" The correct rule is laid down in Palmer v. Andover, 2 Cush. 600, where the court says, that 'where the loss is the combined result of an accident and of a defect in the road, and the damage would not have been sustained but for the defect, although the primary cause be a pure accident, yet, if there be no fault or negligence of the plaintiff, if the accident be one which common prudence and sagacity could not have foreseen and provided against, the town is liable.'" Kelsey v. Glover, 15 Vt. 708; Angell on Highways, 275.

The rule of law announced in City of Joliet v. Verley, 35 Ill. 58, is adopted and applied in its full extent by our

Supreme Court in the case of City of Bloomington v. Bay, 42 Ill. 503.

The rule is further sustained by our Supreme Court in the case of City of Lacon v. Page, 48 Ill. 499.

The rule is again sustained in the case of Village of Carterville v. Cook, 29 Ill. App. 495.

This last case was appealed to the Supreme Court, and the court was hardly pressed to set aside the rule of the Verley case and adopt the rule now urged by appellant. The case is reported in 129 Ill. 152. Scholfield, J., delivering the opinion of the court, says:

" The evidence given upon the trial tended to prove that the plaintiff, a boy of some fifteen years of age, while in the observance of ordinary care for his own safety, passing along a much used public sidewalk of the defendant, was, by reason of the inadvertent or negligent shoving by one boy of another boy against him, jostled or pushed from the sidewalk, at a point where it was elevated some six feet above the ground, and was unprotected by railing or other guard, and thereby seriously injured in one of his limbs.

" The objection urged against the ruling in refusing and modifying instructions, presents the question whether, conceding the negligence of the defendant in omitting to reasonably guard the sidewalk at the point where plaintiff was injured, by railing or otherwise, the concurring negligence of a third party over whom it had no control, in producing the injury, releases it from liability. The Supreme Court of Massachusetts have held in Rowell v. City of Lowell, 7 Gray, 103, Kidder v. Dunstable, Id. 104, and Sheppard et ux. v. Inhabitants of Chelsea, 4 Allen, 113, that it does. These cases, however, seem to rest, to some extent, upon the phraseology of the Massachusetts statutes, which is less comprehensive, in this class of cases, than is the ruling in this court. Chicago v. Keefe, Adm'r, 114 Ill. 222. At all events, we are committed to a different line of ruling upon this question. In Joliet v. Verley, 35 Ill. 58, Bloomington v. Bay, 42 Ill. 503, and City of Lacon v. Page, 48 Ill. 500, we held that if a person, while observing due care for his personal safety, be injured by the

combined result of an accident and the negligence of a city or village, and the injury would not have been sustained but for such negligence, yet, although the accident be the primary cause of the injury, if it was one which common prudence and sagacity could not have foreseen and provided against, the negligent city or village will be held liable for the injury.

"It is not perceived how, upon principle, the intervention of the negligent act of a third person, over whom neither the plaintiff nor the defendant has any control, can be different in its effect or consequence, in such case, from the intervention therein of an accident having a like effect. The former, no more than the latter, breaks the casual connection of the negligence of the city or village with the injury. The injured party can no more anticipate and guard against the one than the other, and the elements which constitute the negligence of the city or village must be precisely the same in each case; and we have accordingly held that where a party is injured by the concurring negligence of two different parties, each and both are liable, and they may be sued jointly or separately. Wabash, St. Louis & Pacific Ry. Co. v. Shacklet, Adm'x, 105 Ill. 364; Transit Co. v. Shacklet, 119 Ill. 232. And this is abundantly sustained by decided cases elsewhere. Northern Pennsylvania Railroad Co. v. Mahoney, 57 Pa. St. 187; Cleveland, etc., Railroad Co. v. Terry, 8 Ohio (N. S.), 570; Smith v. N. Y., S. & W. Railroad Co., 46 N. J. L. 7; Webster v. Hudson River Railroad Co., 30 N. Y. 260; Patterson on Railway Accident Law, Secs. 39, 95, and cases cited in notes appended to each section; see, also, Shearman & Redfield on Negligence, 2d Ed., Secs. 10, 27, 46, 401. And we have applied the same rule in a suit for negligence against a municipal corporation. Peoria v. Simpson, 110 Ill. 301.

"The Massachusetts rule seems to be applied also in Maine (Moulton v. Sanford, 51 Me. 127; Wellcome v. Leeds, Id. 313), but it seems to have been elsewhere repudiated when the question has been considered. See Hunt v. Pownal, 9 Vt. 411, and authorities cited *supra*."

Our Supreme Court, as in New York, has declined to follow the rule as held in Massachusetts, Maine and Wisconsin,

but has adopted the rule held in Vermont. The Verley case is based upon the doctrine of Hunt v. Pownal, 9 Vt. 411. And in the case of the Village of Carterville v. Cook, *supra*, the Supreme Court of this State reaffirm and adopt the rule of the Hunt (Vermont) case.

CARTWRIGHT, J. Exchange street in the city of Joliet runs west from Bluff street, which extends north and south along the base of a bluff or hill. Exchange street was laid out sixty-six feet wide, and originally extended up the hill on quite a steep grade to an intersection with Broadway, at the top of the hill, about two hundred and forty-eight feet west of Bluff street. Broadway runs north and south and extends from its intersection with Exchange in its northerly course up a hill to Oneida street. About the year 1886, the city of Joliet cut down about two-thirds of Exchange street for the purpose of making a more level and convenient route from Bluff street west, to regions lying west of Broadway, and thereby entirely severed the former connection of most of Exchange street with Broadway and carried Broadway over the part so cut down by means of a viaduct. About one-third of Exchange street was left substantially at the original grade connecting Broadway with Bluff street as before. The roadways were of stone and were separated by a stone wall. There was a sidewalk on the north side of the upper roadway and a carriage-way next south with a cobble-stone gutter next the stone wall. The carriage-way declined toward the wall, the decline from the middle being about six inches in ten feet. The stone wall was made with benches or rises going up the hill and finished with coping stones laid level. The wall was about four feet higher than the carriage-way proper and from four to something over five feet higher than the gutter. A carriage could be driven in the gutter and close to the wall. On the evening of June 2, 1889, at about ten o'clock, Mary A. Shufelt was riding in a top buggy with the top partly down, drawn by a horse procured at a livery stable by a young man who was driving and managing the horse, down the hill on Broadway from Oneida street

toward the viaduct and the upper roadway on Exchange street. The horse started into a trot, and when the driver pulled the lines to check him, it was found that the bit had parted at the connection of the mouth-piece with one ring, and the bridle was pulled back off from the horse's head upon his neck, and he was freed from any kind of restraint. The horse ran down Broadway and turned into the upper roadway on Exchange street toward the barn where he was kept. In making the turn the buggy struck the stone wall at a point where it was a little over five feet higher than the gutter and between sixteen and seventeen feet higher than the lower roadway. The driver, who was nearer the wall, was thrown over it into the lower roadway, and Miss Shufelt was thrown upon the wall, and then fell from the wall into the lower roadway. The seat arm to which she was clinging was broken and her hand lacerated and she sustained injuries from which she was paralyzed and became utterly helpless with no prospect of recovery. The horse continued down the hill with the buggy until it struck a telegraph pole, where the buggy was left with the right fore wheel dished and the thills and cross bar broken. Suit was instituted and there was a verdict and judgment for $5,000. The charges upon which the claim was based were, that the upper roadway was not of sufficient width; that it was out of repair and in bad and unsafe condition, and that the stone wall was of insufficient height. The errors insisted upon here are, that the court erred in admitting evidence of appellee's financial condition and in giving and refusing instructions, and that the evidence did not warrant the verdict. Appellee, when testifying, was asked if she had been able to pay the doctor's bill and she answered that she had not. No objection appears in the record at that point. She was afterward again asked if she had been able to pay it, to which question objection was made. She answered the question before any ruling the same as before, and the answer was immediately stricken out by the court. The evidence, although immaterial, was already before the jury, without objection, and the court struck out the answer made probably without any wrongful intention before the

court had ruled. There seems to be nothing in that claim of error. The second instruction given for appellee is the only one of the instructions given that is objected to, and it is claimed to be erroneous in assuming that the runaway belonged to that class of accidents known as ordinary accidents.

The instruction contained all the necessary requirements of care and prudence on the part of appellee and her companion, including the requirement that the bit became loosened and the control of the horse lost without fault on the part of either of them, and referred the jury to the evidence on those questions, but it is insisted that the jury should have been required to decide from the evidence whether the runaway was an ordinary accident. Horses are in general and constant use with bridles and bits as a means of restraint. The loosening or breaking of a bit or bridle is referable to causes in general existence and operation, and the conduct of horses in general when freed from restraint is matter of ordinary observation.

The running away of horses attached to vehicles is so clearly a common and ordinary accident that the nature of this runaway as belonging to an ordinary class of accidents can not be questioned. There was nothing extraordinary in its nature, but it was one of the usual occurrences to be expected in the use of horses upon the streets, and appellant could not be injured by its being treated as such. Such an accident was treated by the Supreme Court as ordinary and of a class to be guarded against in City of Lacon v. Page, 48 Ill. 499.

Before this accident the horse had proved uniformly kind and gentle, the harness was nearly new, and it does not appear, nor is it claimed that appellee or the driver were guilty of any negligence. Neither is there any objection to the verdict on account of the amount of damages. The point is made that the wall was not of insufficient height, because it was high enough to stop a carriage if not struck with sufficient force to throw the occupant over, and if struck with such force, then it would be safer to be thrown over into the cut than to be thrown against a higher wall. It is said that if the wall had been

higher, appellee might have been instantly killed. It is impossible to say what the comparative chances in general might be, and we have no rule or formula for determining the comparative probabilities of injury or death by being thrown against the wall or down into the street below, nor does the evidence aid us to determine that question in this case. Appellee does not seem to have been thrown with very great force, for she alighted upon the wall and fell or rolled off into the cut. We are not able to say from the evidence that it would be safer to be thrown down sixteen or seventeen feet into a stone cut than to be thrown against a wall. It does appear, however, that appellant, by its act in a matter where there was no compulsion upon it to act at all, had produced a condition not before existing, where in case of such an accident as this runaway, one or the other of those things would be very likely to happen. Exchange street was a street in regular, daily use by the public, and when appellant formed its scheme for cutting down a part of it to further the convenience of its citizens, and designed leaving a portion for its former use, it was its duty to make the proposed change in such way as to leave the upper roadway reasonably sufficient in width and method of construction to answer the purposes of a public way under all ordinary conditions and in view of ordinary accidents. It was required to so construct it as to reduce, as far as reasonably practicable, the chances of injury to persons using the way on account of the ordinary accidents incident to such use. If it could not make the proposed change where there was a safe highway existing and leave an upper roadway reasonably safe after the change, it should forbear to make it. Joliet v. Verley, 35 Ill. 58. Cities are invested with the power of eminent domain, and are thus provided with the means to acquire all necessary lands for streets, and they assume the duty of exercising all the chartered powers they possess in the performance of their obligations to a reasonable degree. While the obligation extends no further than to require that the way shall be reasonably safe, it must be so in view of ordinary accidents likely to occur. On the north side of the upper roadway there was a sidewalk which reduced

the space left for a carriage way, so that when the horse
turned into Exchange street it was necessary to turn upon a
comparatively narrow way.   It is matter of common knowl-
edge that it requires considerable space to make a turn in
safety when going at a high rate of speed.   This horse was
not running fast, and might have made the turn in safety if
the grade had been favorable, but in addition to the narrow
way, the street surface inclined toward the wall, making it
still more difficult to make the turn in safety.   As it was, the
horse practically cleared the wall, and with but little more
space the injury would not have occurred.   A coping stone of
great weight was thrown into the cut, but it is evident that
this was not done by striking against it alone, but more prob-
ably it was lifted by the wheel running under it.   The break-
ing of the thills and cross bar was probably done at the
telegraph pole.   We think there was sufficient evidence to
authorize the jury to find that the roadway, by reason of its
width and the kind and manner of construction of the road-
way and wall with the deep cut adjoining was not reasonably
safe for teams coming down the hill on Broadway and turning
into the roadway at any considerable rate of speed and con-
tinuing down the hill.   Those hills and all the surroundings
were matters to be considered in determining the plan of con-
struction, and the way should be reasonably safe in view of
the entire situation.   The original way was free from the
dangerous adjunct of a deep cut, and appellant should not
make one and leave the street open above unless it could do
so with a due regard to the public safety.

The law applicable to the case is well settled in this State.
If there is negligence on the part of a city, the mere fact that
it is through an accident that the negligence produced the
injury, will afford no excuse for the city.   The injury to the
appellee was the combined result of the runaway and of the
insufficiency of this roadway, and but for such insufficiency
the injury would not have occurred.   If a person while
observing due care for his personal safety be injured by the
combined result of an accident and the negligence of a city
or village, and the injury would not have been sustained but

for such negligence, yet, although the accident be the primary cause of the injury, if it was one which common prudence and sagacity could not have foreseen and provided against, the negligent city or village will be held liable for the injury. Village of Carterville v. Cook, 129 Ill. 152; Joliet v. Verley, 35 Ill. 58.

What has been said disposes of questions raised on the refusal of instructions for appellant.

The judgment will be affirmed.

*Judgment affirmed.*