## City of Joliet v. Emma Blower et al.

1. *Cities and Villages—Damages in Grading Streets—Evidence of Proposed Improvements.*—In an action against a municipal corporation for damages, occasioned by cutting down the grade of a street, the court excluded evidence, offered on the part of the defendant, of the building of an abutment at the intersection of the streets with steps for foot passengers, etc., and the proposed erection of a bridge over the street cut down. This evidence consisted of proceedings of the city council in directing advertisements for bids, advertisements in pursuance of such directions and contract entered into, and the testimony of the city engineer, concerning plans made by him. It did not appear that there was any fixed and definite plan to be preserved and incorporated in the record so as to bind the city to carry it out. There was no ordinance or other record by which the city had determined upon any plan, but the attempt was merely to prove what the council had done in the way of advertising for bids and letting contracts. *It was held,* that the evidence was properly excluded.

2. *Cities and Villages—Purchase of Property on Streets.*—A purchaser of property on a street in a city can not be held to anticipate that the city will probably destroy the value of such property in a large measure by cutting down streets to accommodate people living on other streets, or that having cut down part of the street, and made an ample roadway for such people, it would then excavate the remainder of the street and cut off access to the property entirely.

3. *Estates—Estimating Value of, etc.—Tables.*—Where it is necessary for the jury to determine the comparative value of a life estate and remainder in real property, it is competent to show and give in evidence computations, made by experts, under the various tables in general use, made by compiling statistics, and showing the general expectancy of life.

4. *Right of Action—When it Accrues.*—Where a street has been cut down, and access to it is destroyed, and damage had resulted to the property, the right of action is complete. If the city designed in the continuance of the work to do any act that would lessen the damage, it should have offered to bind itself to do the act so that the plaintiff might have an action in case of failure to do it.

**Memorandum.**—Action of case. Appeal from the Circuit Court of Will County; the Hon. Dorrance Dibell, Judge, presiding. Heard in this court at the May term, 1893, and affirmed. Opinion filed December 12, 1893.

## Statement of the Facts.

This is an action of case, instituted by the appellees, as owners of the real estate named, subject to the life estate therein, of their mother, and for the recovery of damages to their reversionary interest in the property, occasioned by certain improvements in process of construction by appellant, in Exchange street in the city of Joliet.

The suit was commenced December 24, 1891, by Harriet H. Cust, the mother of appellees. Thereafter, appellees are brought into the suit as co-plaintiffs. This was done June 25, 1892. November 7, 1892, a motion was made for leave to file an amended declaration, and for leave to dismiss, as to Harriet H. Cust. November 9, 1892, an amended declaration was filed by, and in the name of Harriet H. Cust and appellees, as joint plaintiffs. January 7, 1893, the suit was dismissed as to Harriet H. Cust, and leave given to file the amended declaration theretofore filed. February 7, 1893, the plea of general issue filed to the original declaration, was ordered to stand to the amended declaration. The cause proceeded to trial on this issue.

George S. House, attorney for appellant.

Egbert Phelps, attorney for appellees.

OPINION OF THE COURT, CARTWRIGHT, J.

Bluff street, in the city of Joliet, runs north and south, along the base of a hill. Broadway is the next street west, and is on the top of the hill. Hickory street is the next street west of Broadway, and these streets are parallel with each other; Exchange street runs west from Bluff street, and intersects Broadway and Hickory. Lots four and seven, in block fourteen, in West Joliet, lie sixty feet north from Exchange street, between Broadway and Hickory. Lot four fronts on Broadway, and lot seven lies north, and extends from the rear of lot four to Hickory. This is residence property, having a house on lot four and a barn on lot seven. In order to improve the grade on Exchange street, and avoid going up the steep hill to Broadway for travel from Bluff street to streets west of Broadway, the city, some years ago, cut down about two-thirds of Exchange street, and carried Broadway over it with a bridge, but left the remainder of the street as a means of access from Broadway to Bluff street. There were then upper and lower roadways on Exchange street, and the situation is fully described in the case of Joliet v. Shufelt, 42 Ill. App. 208. Afterward the city excavated the whole street to the depth of the lower roadway, removed the upper roadway, and cut off all access to Exchange street from Broadway. Harriet H. Cust, the owner of a life estate in said property, brought this suit to recover damages resulting to her estate in the property from the last excavation, by which the upper roadway was removed.

Afterward, the appellees, who were owners of the remainder expectant upon the termination of the life estate, were admitted as plaintiffs, the suit was dismissed as to Harriet H. Cust and the declaration amended so as to seek a recovery for the injury to the remainder. There was a trial, resulting in a verdict for appellees for $1,000, on which judgment was entered.

The first point relied upon for a reversal of the judgment is, that the court erred in excluding evidence of the proposed building of an abutment at the intersection of Broadway

and Exchange streets with steps for foot passengers leading down into Exchange street, and the proposed erection of a bridge on Broadway across the cut on Exchange street. The evidence consisted of proceedings of the city council in directing advertisements for bids, advertisements in pursuance of such directions, and contracts entered into, and the testimony of the city engineer concerning plans made by him. Counsel for appellees says that all claims for damages, except such as resulted from cutting off access to Exchange street for wagons and carriages, were abandoned on the trial, and therefore the evidence was irrelevant. However that may be, there was no evidence of any fixed and definite plan to be preserved and incorporated in the record, so as to bind appellant to carry it out. There was no ordinance or other record by which appellant had determined upon any plan, but the attempt was merely to prove what the council had done in the way of advertising for bids and letting contracts. We think that the evidence was properly excluded.

It is next argued that the cutting down of Exchange street, so as to cut off access to it from Broadway, was such a change in the street as the purchaser of the property in question should be held to have anticipated as likely to occur in the improvement of the city, to meet the public wants, and that therefore there was no right of recovery. If the rule contended for is a proper one in any case, it seems clear to us that a purchaser of property on Broadway would not be held to anticipate that the city would probably destroy the value of such property in large measure, by cutting down Exchange street about fifteen feet, to accommodate people living on streets west of Broadway, or that having cut down part of the street and made an ample roadway for those living farther west, it would then excavate the remainder and cut off access to it entirely. That there was a right of recovery is well settled. Rigney v. City of Chicago, 102 Ill. 64; C. & W. I. R. R. Co. v. Ayers, 106 Ill. 511; City of Bloomington v. Pollock, 141 Ill. 346.

It is also objected that the court permitted an expert to

testify to computations made by him from mortuary tables, showing the comparative value of the life estate and remainder in the property according to those tables.   It was necessary for the jury to determine that question, in order to fix the amount of damages to appellees' interest.   The age of Harriet H. Cust was proved, and the expert gave the computations under the various tables, each differing from the other.   The tables were the London, the Equitable, the Northampton, the Carlisle, the Wigglesworth, and another table not named.   There was no suggestion to the jury as to the adoption of either of these tables, or any table.   The question being submitted to the jury, we see no objection to affording them the aid to be derived from tables in general use, made by compiling statistics, and showing the general expectancy of life, which were generally accepted by the public and corporations in determining that question.

It is suggested that the suit was prematurely brought, inasmuch as the appellant had not completed the improvement when the suit was commenced.   It was proved that the street had been cut down, the access to it destroyed, and the damage sued for had resulted to the property.   The right of action was, therefore, complete, and if appellant designed in the continuance of the work to do any act that would lessen such damage, it should have offered to bind itself to do the act, so that appellees might have their action, in case of failure to do it.   The jury were permitted to view the improvements, and the evidence shows that the abutment, with steps for foot passengers, was partly built, and the material for the bridge, consisting of the iron work and lumber, was on the ground.   The jury saw all that had been done by appellant that would shed any light on the case, and were instructed to take their view of those things into account.   Appellant had the benefit of all that had been done.   We think that the action was not premature.

What has been said, disposes of all questions raised concerning instructions.

The judgment will be affirmed.