## LARAMIE VALLEY RAILWAY COMPANY v. GUSTAV GRADERT, ET AL.

(No. 1685; Sept. 21, 1931; 3 Pac. (2d) 88)

For the plaintiff in error there was a brief by *Corthell, McCollough & Corthell,* of Laramie, Wyoming, and an oral argument by *Mr. N. E. Corthell.*

270

For the defendants in error there was a brief and oral argument by *C. P. Arnold,* of Laramie, Wyoming.

RINER, Justice.

By this proceeding in error the Laramie Valley Railway Company, a corporation, asks a review of the record made in an action brought by it under Chapter 314, Compiled Statutes of Wyoming 1930, to condemn a right of way through lands owned by Gustav Gradert, Trustee, et al.

The parties will be referred to hereinafter generally as plaintiff and defendants, respectively.

Commenced in Albany County, the action was, on change of venue, transferred to the District Court of Laramie County. Pleadings, consisting of plaintiff's petition, defendants' answer thereto, and a reply by plaintiff, were filed, and on June 18, 1928, upon the application of the condemnor, the court made an order which, after determining plaintiff's right to appropriate the property as prayed in its petition, its inability to agree with the landowners and the necessity for such appropriation, appointed three commissioners to ascertain and certify to the court the compensation to be made defendants for the land taken or affected by plaintiff's right of way. In this order authority was given the plaintiff, upon furnishing bond (W. C. S. 1920, §§ 4922, 4923), ''conditioned for the payment of such condemnation money, compensation and costs as shall be finally assessed and determined,'' to enter upon and appropriate a 99 foot strip of land across defendants' lands for right of way purposes.

Thereafter and on September 29, 1928, the commissioners, after viewing the lands and taking evidence touching the matters submitted to them, filed their certificate awarding the compensation which they found proper to be made to the owners of the lands in consequence of the appropriation sought by plaintiff. They also filed with their certificate a transcript of the evidence presented before them by the parties to the proceeding. October 2nd following, the claims of the commissioners for their own services were filed in the cause, one of said claims being for per diem services of ten days at $5 per day, 230 miles of travel at 10 cents per mile, and phone costs and postage $1, or a total of $74; the other for per diem services of nine days, 230 miles of travel at the rate mentioned above, for meals $1.50, or a total of $69.50; and the third for per diem services of eight days, 510 miles travel at the rate aforesaid, and phone call 65 cents, or a total of $91.65.

On October 25, 1928, defendants filed exceptions to the award thus made, together with a written and verified demand for a jury trial. May 10th, 1929, they also filed a motion to strike out one of the paragraphs of the commissioners' certificate, as well as a motion for a declaratory order defining the rights of the parties under the award.

Nothing further appears to have been done in the case until January 10, 1930, when plaintiff filed and presented to the court its motion to require the defendants to elect their method of procedure under the several papers filed by them as aforesaid and for the court to define the same. This motion and defendants' motions to strike and for a declaratory order, which were heard at the same time, all were, on the date last mentioned, denied.

April 7, 1930, defendants withdrew their demand for a jury, submitting the issues in the cause to the determination of the court. On the 12th of May following, plaintiff filed its motion that the court direct defendants to elect whether a proposed irrigation ditch referred to in the certificate of the commissioners should be constructed on or off the right of way taken by plaintiff, the latter thereby offering to "construct and complete same as proposed in the petition and in the award of the commissioners." This motion was, by order entered July 2, 1930, denied by the court, and on the 21st of that month its decree was entered, striking from the commissioners' certificate of award the paragraph thereof previously attacked by defendants' motion above mentioned, confirming said award as thus amended, and rendering judgment in form personal and unconditional in favor of defendants and against the plaintiff, together with a specified sum as costs.

Subsequently plaintiff filed its motion for a new trial, which was, on August 2, 1930, denied. Dissatisfied with the amount of costs as taxed by the clerk, plaintiff, by motion, demanded a retaxation by the court, which, on August 28, 1930, was done with the result that they were reduced from $422.71 to $54.66. In the motion last mentioned, plaintiff

objected to the allowance of the claims of the commissioners, as above recited, as costs in favor of the defendants, they having been taxed as such by the clerk, because the defendants "had not paid or incurred any liability for these items or any of them" and they, too, were accordingly removed from the costs recoverable by the defendants. In concluding its order regarding the matter of costs the District Court, however, found that plaintiff should pay the commissioners' claims for compensation, travel and expenses, as presented, and ordered that such payment be made.

The first and chief complaint made by plaintiff concerns the action of the trial court in striking out a certain paragraph in the certificate of the commissioners, as stated above. That certificate, after setting out a detailed description of the land actually taken for the plaintiff's right of way, finding its value to be $1500, and also finding that other described lands of the defendants, while not taken would yet be affected injuriously by such taking, found that:

"The damages to the lands so affected but not taken amount to Nine Thousand Dollars; And that the value of the real benefits and advantages which will accrue to such lands so affected but not taken from the construction of the railroad of the plaintiff is Fifteen Hundred Dollars; and that the damages to the lands affected but not taken after deducting therefrom the value of such real benefits or advantages are Seven thousand five hundred dollars."

The certificate then concluded with the following language:

"The damages to the lands affected but not taken include an allowance of Twenty-five hundred Dollars to the defendants for the expense of constructing an irrigation ditch along and outside the right of way of the railroad on the southeast side from the intersection of the Dowlin ditch in the Southeast Quarter (SE¼) of Section Thirty-two (32) to the eastern boundary of defendants' lands in the

Southwest Quarter (SW¼) of Section Twenty-seven (27), Township Fifteen (15) North, Range Seventy-four West, for the conveyance and distribution of water to the meadow lands southeast of the railroad. If such ditch should be constructed by the plaintiff on or off its right of way, the damages to the lands affected but not taken should be reduced by the said sum of Twenty-five hundred Dollars.''

The paragraph last above quoted is the one removed from the certificate by the order now asserted by plaintiff to be error.

It appears from the record through the evidence submitted to the commissioners by the parties that the right of way taken by plaintiff passes through defendants' lands in a diagonal direction, running northeasterly and southwesterly. These lands are irrigated by two ditches, one of which, called the Branch Ditch, for some considerable length extends on the northwesterly side of plaintiff's right of way, and, roughly speaking, parallels it at some distance therefrom; the other ditch, designated as the Dowlin Ditch, running in a southeasterly direction, crosses the right of way aforesaid and diverges from it more and more as the ditch proceeds. While several lateral ditches from the Branch Ditch, previous to the construction of the railroad line, ran in a southeasterly direction towards the Dowlin Ditch, and so aided in the irrigation of the lands between the two ditches, the method of irrigating defendants' lands on the southeasterly side of plaintiff's right of way was, prior to the construction of the railroad, in large measure accomplished by allowing the water from the Branch Ditch merely to escape therefrom at various points along its course, and by reason of the inclined topography obtaining a natural flow over the lands from northwest to southeast. The result of the construction of the railroad was to cut off this natural flow of water over the defendants' lands lying southeasterly from the right of way, and, in an effort to mitigate the damages arising in consequence, the plaintiff proposed to do certain construction work.

Plaintiff's petition, invoking the right of eminent domain, subsequent to pleading a specific description of the land wanted for its right of way, contained a statement to the following effect:

"It is intended to construct a railroad upon said property consisting of embankments of earth and other like material * * * with grade crossings, bridges, culverts, borrow pits, drains, ditches and conduits for the convenient passage to and fro across such right of way, and for draining away surplus water and for conducting water for irrigation to adjoining and neighboring lands substantially in the manner heretofore used and enjoyed, and generally with all such means, instrumentalities and things as are usual or as may be needful or proper for constructing, maintaining and operating such railroad."

Plaintiff's engineer testified before the commissioners:

"Of course, when we put this railroad across the land it cuts off the natural flow where it would before and it is caught in these ditches and carried along in the ditch instead of just flowing over the ordinary surface like it did before but it is carried in these ditches to higher elevations than natural flow would carry it. The water at the present time—a large portion of it comes from the north and carried in ditches and floods to the south, or southeasterly, at these points where the water goes through natural slues or drainage we put in drainage ditches and that water will go the same as it always did and the water that comes in through the irrigation ditches we put in crossings under the railroad at wherever we cross a ditch line of the present irrigation system and it will be carried the same as it was before previous to construction through the ditches. The water that is cut off from natural flow over certain portions of it is carried from the borrow pits on the north side to the culvert into the irrigation ditch on the south side at high points and the water level kept up to a high level in the irrigation ditch during the irrigation season. And this irrigation ditch can be constructed along the high line so that irrigable lands will be flooded, and flooded over any of the lands on the south from that ditch."

With this testimony plaintiff submitted certain maps and plans of the proposed construction work. On cross-examination the engineer aforesaid stated in the course of his description of his work that: "The fact is that the detail design of the crossings and culverts are not settled." He also testified, in substance, that the details were to be determined later; that the general plan of the work was decided upon; that as to how many head gates were intended to be put in and how they were to be constructed in connection with the proposed irrigation ditch, he could not, at the time of the hearing before the commissioners, exactly tell; that this ditch would be about six feet on the bottom and its grade six feet per mile—the grade of the Dowlin Ditch being variable. In urging upon this court the asserted error in the decree herein through removing from the commissioners' award the paragraph quoted above, plaintiff insists first that:

"The purpose and function of the irrigation ditch was to off-set the obstruction of the railroad by constructing the ditch on the southeast side to control the distribution of the water over the lands on that side of the railroad, thus eliminating an element of the damage found to the extent of $2500.00.

"The paragraph of the award which was stricken out by the trial court expressed this conclusion and understanding of the commissioners, and determined the net amount of damages on the basis of completion of the project, at $5,000.00 for the lands not taken."

It is also said, generally, citing many authorities, that plaintiff may make its own plans for its project and construct the works in any manner which it may reasonably deem needful; that ways and rights of passage, ditches, drains, easements and privileges may be reserved for the benefit of the owner of the property condemned at grade or by viaduct or subway, or otherwise; and that plaintiff is bound by its submitted plans and proposed reservations,

and the award should be made upon giving them proper consideration.

It may be conceded that ordinarily the general statement of plaintiff's rights contained in the preceding sentence may be regarded as correct, but so far as this record discloses, we are quite unable to perceive how the construction of the proposed irrigation ditch by the plaintiff would result in eliminating, so far as it itself is concerned, a $2500 element of damage, or that the award of the commissioners, taken in its entirety, "determined the net amount of damages on the basis of completion of the project at $5,000 for the lands not taken."

In the case at bar, Section 4919, W. C. S. 1920, designates what the certificate of award of the commissioners shall set forth, to-wit: An accurate description of the land taken, the value thereof, and the damages, if any, to the land affected but not taken, after deducting therefrom the value of the real benefits or advantages accruing to such land from the construction of the railroad. The commissioners, in making such an award, are necessarily to be governed by the statute, as they have no powers other than those so conferred. 20 C. J. 1031, § 418 and cases cited, 1034, § 421 and cases cited; 2 Lewis' Eminent Domain (3rd Ed.) § 761.

An examination of the certificate of award in the record discloses that it in all respects conforms to these statutory requirements, with the exception of the last paragraph in said certificate—that stricken out by the trial court. The first sentence of that paragraph merely undertakes to itemize part of the damages awarded for the lands not taken but injuriously affected, by declaring that such damages include $2500 to the defendants for the expense of constructing an irrigation ditch along and outside the right of way of the railroad on its southeasterly side. It added nothing to the certificate as concerns statutory requirements, was unnecessary surplusage and could properly be stricken therefrom or disregarded without in the least affecting the

remaining portion of said certificate which complied with the law. 2 Lewis' Eminent Domain (3rd Ed.) § 761, p. 1360; 20 C. J. 1034-5, § 421; Swan vs. Washington R. Co., 108 Va. 282, 61 S. E. 750. See also Aken v. Parfrey, 35 Wis. 249; Walbridge v. Cabot and Walden, 67 Vt. 114, 30 A. 805.

The second sentence of the paragraph under consideration stating that, "if such ditch should be constructed by the plaintiff on or off its right of way, the damages to the lands affected, but not taken, should be reduced by the said sum of $2500" was, so far as the matter of plaintiffs constructing a ditch off its right of way was concerned, an unwarranted exercise of authority, unless the defendant agreed thereto,—something the present record shows they never did. Touching the matter of constructing the ditch on its own right of way, while plaintiff certainly had the right to do that and the commissioners apparently fully considered its plans in that respect, yet quite aside from what has above been said it is difficult to see how the plaintiff has been prejudiced by the action of the trial court in striking out the second sentence of the paragraph aforesaid.

There was no proof submitted in the record before us, that the cost of the proposed ditch, whether built by plaintiff or defendants, would be other than $2500. Neither party to this litigation appears to have taken exception to or formally complained of the finding of the commissioners as to the cost of the proposed ditch. It may fairly be taken as established, then, that whether plaintiff or defendants built the ditch, its cost would be as suggested by the certificate of award. There is no contention that such a ditch was not necessary in order to reorganize defendants' irrigation system, in consequence of the interference therewith caused by the Railroad Company's right of way. Quite the contrary appears to be the fact. The effect of the court's order striking the paragraph aforesaid, was simply to relieve plaintiff of the burden of constructing the ditch in question. If plaintiff itself built the ditch, it would not only

have had to pay the cost thereof in the sum of $2500, but also have had to take the time and trouble appropriate to do the required work. Plaintiff would really seem to have been benefitted by the order of which complaint is made, and defendants in no way question it. Section 4913, W. C. S. 1920, authorizes the trial court, in reviewing the award of the commissioners, to make ''such order as right and justice may require,'' and this would seem to have been done by the decree confirming the essential elements of the award as defined by the statute cited above.

A somewhat similar situation appears to have arisen in Great Western Ry. Co. v. Ackroyd, 44 Colo. 454, 98 Pac. 726, 727, where it appeared that respondent was the owner of a farm consisting of 180 acres, through which petitioner's railway sought its right of way, consisting of 5 acres, running east and west and leaving 20 acres lying to the north and 155 acres to the south. An irrigation ditch used for supplying water to the lands crossed them from north to south. The plan of construction submitted by the petitioner's engineer included the construction of a trestle-bridge across a natural depression and water-way on the premises and the placing of a steel siphon with proper approaches to permit the passage of water across the track from the lateral ditch north of the railroad cut to the same ditch south thereof. Petitioner then asked the court to instruct the jury, among other things, that in determining the award to be made they might take into consideration these actual plans on which petitioner's railroad was in course of construction, as shown by the evidence. The request for such an instruction was refused, the court telling the jury that the statutes of Colorado did not require a railroad passing through lands to flume or siphon the railroad's right of way, and that if under the evidence and inspection of the premises they believed that for the proper and reasonable use of the land it was necessary to construct and maintain a flume or siphon, or both, across the railroad track, the burden of such construction and maintenance, in

so far as it·depreciated the value of the land, was a proper element of damage, to be considered by the jury in ascertaining the amount of damages to the residue of the land. It was claimed for petitioner that the failure to give the requested instruction was error. The Supreme Court of Colorado, on review of the judgment, entered on the verdict awarding a certain amount for the taking of the land and another amount for damages to the land not taken, pointed out that the authorities dealing with the question raised were not harmonious. However, in disposing of the point, while indicating that through its previous decisions the appellate court in that jurisdiction was committed, under the state constitution and laws, to the doctrine that a proposition of the railway company in condemnation proceedings to a respondent, to compensate in whole or in part for the destruction of his private way by giving him another, was of no avail to minimize damages if respondent did not choose to accept it, yet said:

"But if it were otherwise, and the instructions the court below gave are wrong, and those asked by petitioner right, how has the railway company been injured? Both parties admit that to the full and proper enjoyment of the residue of respondent's lands one or more crossings over, and a flume above, or a siphon under, the track are essential. It is not claimed by petitioner that in ascertaining the damages to the residue the jury awarded for the element included in the construction and maintenance of the foregoing facilities a greater sum than the reasonable cost thereof; but the contention is that, because petitioner proposed to assume for itself such construction and maintenance, respondent must accept its offer, and since, as to these items, no damage would be occasioned, respondent cannot be allowed anything for them. Assuming, as we may in the absence of a contrary showing, that respondent can construct and maintain these appliances as cheaply as petitioner, and that the jury's estimate was on such basis, in what respect is petitioner harmed if such burden is accepted and discharged by respondent? If the latter does it, petitioner is relieved of the cost of original construction and forever exempt from the continuing duty

of making repairs. Respondent chooses to receive his compensation in money, and out of the award, which is only the actual cost, he proposes to furnish his land with the conveniences that will enable him properly to use it. Petitioner is thus required to pay directly to respondent in money only the sum which it would have to pay if it, rather than respondent, had in the first instance constructed the works and thereafter continually kept them in repair.''

It may well be that a corporation vested with the right of eminent domain can so plan and construct its works upon the land it takes under such a power, as to reserve ways, rights of passage, ditches, drains, easements and privileges to the owner of the land taken which are not incompatible with the use for which the land is condemned. In determining the amount of damages to be allowed for injuries affecting lands not appropriated, such reservations may and should properly be considered by the commissioners or jury. But in the matter now before us, there does not seem to have been any reservation planned or made for the defendants as regards the proposed irrigation ditch upon the land appropriated—the only place it could be established without the consent of the defendants.

When the final order is entered, as provided in § 4920, W. C. S. 1920, the petitioner becomes ''seized in fee of all such real property described in said order as is required to be taken.'' That being the right which petitioner acquires in consequence of the condemnation proceedings, in the matter of a proposed or planned work such as we are now considering, there should be, we think, definite and specific provision made to establish and protect the rights of the defendants by stating due provision therefor in either the petition for condemnation or in a formal offer or plan submitted to the commissioners or the court and jury before the award is made.

In City of Joliet v. Blower, 49 Ill. App. 464, the necessity for the rights of the land owner, as regards easements and privileges tendered by the condemnor, being made spe-

cific, definite and in such form as to clearly bind the condemning party, is discussed thus:

"The first point relied upon for a reversal of the judgment is, that the court erred in excluding evidence of the proposed building of an abutment at the intersection of Broadway and Exchange streets with steps for foot passengers leading down into Exchange street, and the proposed erection of a bridge on Broadway across the cut on Exchange street. The evidence consisted of proceedings of the city council in directing advertisements for bids, advertisements in pursuance of such directions, and contracts entered into, and the testimony of the city engineer concerning plans made by him. Counsel for appellees says that all claims for damages, except such as resulted from cutting off access to Exchange street for wagons and carriages, were abandoned on the trial, and therefore the evidence was irrelevant. However that may be, there was no evidence of any fixed and definite plan to be preserved and incorporated in the record, so as to bind appellant to carry it out. There was no ordinance or other record by which appellant had determined upon any plan, but the attempt was merely to prove what the council had done in the way of advertising for bids and letting contracts. We think that the evidence was properly excluded."

So, where a city took certain lands of the petitioner for water supply purposes, it offered to prove, among other things, that it had expressed a willingness, by parol, to put in gaps and ways for the petitioner across its pipe line at any reasonable places he might indicate, but that he declined the offer, in Ham v. City of Salem, 100 Mass. 350, it was said:

"The taking of the land is effected by filing the description of it in the registry of deeds by the mayor, as provided in the third section. The location of a railroad is an act of a similar character, and the filing of the location is held in such cases to be the taking of the lands. Charlestown Branch Railroad Co. v. County Commissioners, 7 Met. 78. Hazen v. Boston & Maine Railroad, 2 Gray 574. The document thus filed is conclusive upon both parties, and furnishes evidence which is clear and permanent, like a regis-

tered deed. In thus taking the land, the company may reserve to the owner such rights of way or other rights as they may think proper; and the record will show that they are reserved. Such reservations may diminish his claim for damages. But no rights which are not thus reserved will exist. A parol assent that he may have a right of way, or pasturage, or tillage, may be revoked by the city; and a present intent of the city to use a part of the land merely for a cartway, expressed by mere parol, may be changed at their pleasure. If they lay their pipes upon the land, they may decide how far below the surface they shall be laid; and may vary the depth from time to time as they shall think proper; and when they have dug their ditch for the purpose, they may decide whether or not to fill it, and make the surface smooth so that it can be used as a way. And as they cannot now foresee what their future necessities or interests may be, it is important to them to limit their rights as little as possible. Probably it is with this view that they have omitted to make any reservations.

"From this view of their rights, it is obvious that the evidence offered was properly rejected as immaterial."

In the case at bar, as shown by the testimony of plaintiff's engineer, only the general scheme or outline of the work was submitted to the commissioners. The details, such as the number of head gates, their construction, etc.—all important items of construction with a definite bearing upon the service to be rendered by the ditch—were to be developed "later". No provision appears to have been made as to when the ditch was to be constructed,—indeed, so far as this record discloses, it has not been constructed yet—who should maintain the ditch once it was constructed, the time it was to continue in existence, or who should remodel it in case it failed to function properly. Only by defining such matters clearly for the consideration of those vested with authority to make an award, would it be possible for them to do complete justice between the parties, and prevent future conflicts and litigation.

The case of Thompson v. The Milwaukee & St. Paul R. Co., 27 Wis. 93, with relation to the question now under consideration, in many respects resembles the case before

us. The action was one for damages resulting to plaintiff's land from the construction of the railroad of the defendant across it. The defendant cut away a bank of earth in such manner that a retaining wall would be necessary to preserve the bank as thus disturbed. Evidence was offered by the defendant to show its readiness and intention to construct such a wall for the protection of its road. The jury found the value of the land taken to be $25, and the damages to the rest of the lot to be $300, including therein $100 as the cost of building a retaining wall. Defendant requested a new trial and also a specific direction in the judgment that "if defendant should build such retaining wall, plaintiff should only recover $225, and that the collection of the $100 allowed for building such wall, should be stayed to enable defendant to build it." This request was denied, and when defendant appealed from a judgment upon the verdict, in affirming the judgment the appellate court, in the course of its opinion, said:

"It is true, the defendant further offered to file, in connection with this proof, a stipulation that it would build a retaining wall along the plaintiff's lot, and that the verdict in the case should not affect, bar or impair his right to recover the expense of building the wall in another action in case the defendant did not build it. But it is manifest that this was merely denying the plaintiff the right to recover the damages which the law gave him in consequence of the taking of his land and the construction of the road across his lot, and turned him over to another action in case the company did not build the wall. The plaintiff, however, was entitled to recover the whole amount of damages which he had sustained, without the expense of another lawsuit. Upon a proper application it might have been a reasonable exercise of discretion on the part of the Circuit Court to have made a special direction in the judgment, that, in case the company built a proper retaining wall within a brief period, then the collection of a $100—the amount which the jury found it would cost to construct a wall—should be stayed. I very much doubt about the company being entitled to any such direction in the judgment as a strict matter of right, but it might not have been an

unwarranted exercise of discretion on the part of the court to have made it. The company did ask for a new trial because the verdict was against the evidence, and for a special direction in the judgment that if the company built the retaining wall the plaintiff should only recover $225, and that the collection of the $100 be stayed in order to enable it to construct the wall. This motion was denied, and properly so. There was no ground for granting a new trial. And the company did not stipulate any time within which it would build the wall, providing the court would stay the collection of the $100. The court certainly would not have been justified in granting such a stay indefinitely. It should only have granted it upon condition that the company constructed the wall within a reasonable time."

In St. Louis K. & N. W. R. Co. v. Clark, 121 Mo. 169, 25 S. W. 192, 906, 26 L. R. A. 751, a leading condemnation case cited and relied upon by plaintiff, the question of crossings to and from the river front over the railroad, which cut off part of defendant's access thereto, was an important item in the case in determining the damages to be allowed. On the trial plaintiff offered in evidence the following stipulation signed by its engineer:

"The plaintiff in the above entitled case hereby declares and stipulates that its railroad through and over the land of the defendant Wm. G. Clark, in the petition mentioned, and in this proceeding sought to be condemned, shall be constructed in the manner following, to-wit: The center line of said railroad will be thirty-six feet (36 ft.) east of, and parallel with, the west line of the wharf, as established by Ordinance No. 5403 of the city of St. Louis, Mo., and that said company will construct and maintain for the use of said defendant Clark, his heirs and assigns, across the tracks of its railroad within the land of said defendant Clark, two crossings, which shall be located at such places as said defendant shall select, and that said company will lay at each of said crossings, respectively, on each side of each rail of its tracks, securely spiked to the cross-ties, a plank of not less than ten inches (10 in.) in width, and not less than two inches (2 in.) in thickness, and not less than twenty-four feet (24 ft.) in length, the same

to be of good, sound timber and will fill the spaces between the inside planks with macadam or gravel, even with the top of the planks, and will make good and sufficient approaches to said crossings, respectively, of equal width with said crossings, and of easy grade, and will cover said approaches with macadam or gravel to a depth of not less than six inches (6 in.), and will substantially and properly join said approaches up to the plank required to be laid outside of each rail.''

The trial court, upon defendant's objection, excluded the stipulation, and the ruling thereafter on review was held as error. The clear, precise terms of such proposal are in marked contrast to that shown in the instant case, as we have seen. In our judgment the District Court did not err, therefore, in confirming the award in the manner shown by the decree before us.

When defendants' motion to strike the final paragraph of the award of the commissioners came on for hearing, counsel for defendants presented to the court, over plaintiff's objection and exception, a letter signed by two of the commissioners, which purported to explain their award. Plaintiff complains of this. As the question before the court at the time was one of law, merely, and no jury was present, it is difficult to see how any prejudice resulted to plaintiff, even if it appeared by the record—which it does not—that the court gave the contents of the letter any consideration at all.

At the time plaintiff's motion requesting that the court direct defendants to elect, with respect to the proposed irrigation ditch on the southeast side of the railroad, whether such ditch should be constructed on or off plaintiff's right of way, was argued before the court, it appears that the defendants submitted certain signed but unverified statements made by interested persons — to-wit, Eugene Hanson and Henry Bath—objecting to the granting of said motion, which were read to, and, as the record states, ''considered by the court as the protest on the part of the defendants but not introduced or received in evidence and

were left with the court after the defendants had made to plaintiff an unaccepted tender of said Eugene Hanson and Henry Bath, there present, to the plaintiff for his own examination in open court.'' This action of the trial court is urged as prejudicial error. We are unable to see that it was. The statements were not treated by the court as evidence, but merely as a written protest against granting the motion. Doubtless counsel for defendants made verbal protest to the same purport at the time. The question to be determined was a legal one, and if the court's order disposing of the motion was correct, plaintiff has no cause for complaint. That it was correct, we have no doubt, as plaintiff could control the location of any proposed ditch only upon land embraced within the boundaries of its right of way. Plaintiff could hardly compel defendants to declare how they wished to use their own land. Plaintiff's brief concedes that it ''suffered no material injury through the denial of the motion.''

It is said that there was error in the court's ruling denying plaintiff's motion to require the defendants to elect between their exceptions and motion for a declaratory order, and their demand for a jury trial, and for direction as to the order and method of procedure in the disposition of the cause. We do not think so. When the demand for a jury trial was filed by defendants and so long as it was not withdrawn, nothing could be done relative to the award made by the commissioners, as it was then subject to be superseded by the verdict of the jury when rendered. The filing of exceptions to the commissioners' award, motion for declaratory order relative to it, and motion to strike a portion thereof, while the demand for a jury was still pending, was improper and the court correctly denied the several motions, while the exceptions do not appear to have been presented or passed upon. When the demand for a jury was withdrawn, the award of the commissioners came before the court for confirmation, with the power vested in it by § 4913, W. C. S. 1920, upon proper showing, to ''make

such other order as right and justice may require." This power the court used in striking out the last paragraph of the award—a ruling pointed out above as properly made. So it is apparent that the result desired to be obtained by plaintiff through its motion to clarify the situation, was ultimately accomplished by the court's disposition of the several motions.

It is urged that the District Court should not have given an unconditional personal judgment in favor of the defendants and against the plaintiff. In 20 C. J. 1061, the text, citing a number of cases, declares the rule to be: "A personal judgment is proper where the property has been taken by consent or otherwise before compensation has been made." So in Southern Indiana Power Co. v. Cook, 182 Ind. 505, 107 N. E. 12, 14, we find this language used:

"No question is made by appellant as to the form of the judgment and indeed there was nothing in it to arouse complaint from appellant. The general rule in such cases is thus stated in 2 Lewis' Eminent Domain (3d Ed.) § 785: 'If the statute is so far silent upon the subject as to leave the matter open for judicial construction, then the proper judgment to be entered will depend upon the following consideration: If possession has already been taken of the property, either by consent or otherwise, * * * then a personal judgment with all its incidents may properly be entered. But, if the property has not been entered upon and can not be until compensation is made, and the effect of the proceeding is to fix a price at which the petitioner can take the property if it elects so to do, then a personal judgment is improper and should not be entered.' "

There is nothing in the statutes to which our attention has been directed interfering with the entry of a personal judgment under circumstances such as this case presents. §§ 4922, 4923, W. C. S. 1920, allow the condemnor to take possession of the property sought at any stage of the proceedings, but only upon giving a bond "conditioned for the payment of such condemnation money, compensation and costs, as shall be finally assessed and determined;" they

provide further, that "after giving such bond, and so entering into the possession of said property, the railroad company can not abandon or dismiss the proceeding; and where possession has been so obtained, it shall be lawful for the owners and parties interested to conduct the proceeding to a final conclusion, if the same shall be delayed by the railroad company."

The petitioner in the case at bar availed itself of the rights given by these sections, and should also carry the burden they impliedly impose, i. e. that of paying for the land when the final award is made. We see nothing amiss in the trial court's providing for the entry of a personal judgment for the prompt collection and payment of the award. Of course, upon payment or collection of the money due thereon, the condemnor is entitled to the additional order provided for by § 4920, W. C. S. 1920, the entry of which operates to vest title to the property taken in the petitioner.

Complaint is made by plaintiff of the court's order allowing compensation "on account of per diem and mileage" to the three commissioners appointed and who served in the case. In 20 C. J. 1107, it is said, announcing what would seem to be an obvious principle in appellate practice in eminent domain proceedings:

"In general every party to the record whose rights and liabilities may in any way be affected by the final decree, or any person who was entitled to notice of the proceedings before the viewers, should be made a party to the appeal."

It might very well be held that this principle embraces the commissioners themselves, when their right to compensation is drawn in question. Defendants in error disclaim any interest in the matter and rightly so. The commissioners were appointed at the instance of plaintiff, and should be paid by it their legal compensation,—the quantum thereof being a matter at this time unnecessary for us to determine. Here plaintiff asks this court, without their being

represented or heard, to deprive them of their compensation as awarded by the trial court. This we must decline to do. They were not made parties to this proceeding in error. If it should be thought that a separate proceeding in review of the order made was needful to bring about an examination of the point, the same result as above indicated would be necessarily reached. No such proceeding is before us.

The contention is further made by plaintiff that the trial court erred in allowing interest on the amount of the commissioners' award from September 29, 1928—the date when it was filed. In Wyoming Railway Co. v. Leiter, 25 Wyo. 286, 169 Pac. 1, 2, this court held, on review, in a condemnation proceeding, that where the plaintiff railroad company had filed exceptions to the commissioners' award and the land owner had also filed his exceptions to the award, together with a demand for a jury, all these filings being made after the lapse of the time allowed by law for doing so, and thereafter by agreement of the parties withdrawn, interest should be allowed on the award from the date of filing same, Mr. Justice Beard saying in the course of his opinion:

"It is argued on behalf of plaintiff that by reason of the exceptions to the commissioners' report and the demand for a jury trial by defendants, 'there was no time prior to the entry of the judgment when plaintiffs in error could have paid the proper amount into court.' We do not agree with that statement. More than thirty days from the filing of the report had elapsed before any exceptions thereto were filed, and then they were filed by the plaintiff; and not until nearly six months thereafter were exceptions filed by defendants. At the end of thirty days from the filing of the report of the commissioners, no exceptions being filed, the duty of the court was to confirm the award. Whether it did so or not, plaintiff knew then the amount defendants would be obliged to accept, and it cannot be allowed to escape payment of interest because it objected to the amount of the award."

In Metler v. Easton and Amboy Railroad Co., 37 N. J. L. 222, the subject of interest on the award of commissioners in eminent domain proceedings was before the court for examination, and the following language, indicating the view taken, was employed:

"Interest on demands of this character not being a matter of contract, or of positive law, is allowed on equitable principles, just as a jury is directed to allow interest in actions of tort, where the circumstances are such that complete justice cannot be done without adding to the damages actually sustained, interest from the time the wrong is done.

"If the owner is the sole appellant, and the verdict of the jury should not be in excess of the appraisement of the commissioners, interest should be disallowed. In that event, the postponement of the receipt of the compensation adjudged by the commissioners and decided by the jury to have been adequate, would be due to his own act. To allow him indemnity for such delay in the form of interest, would be unreasonable and unjust. But in this case the company was also an appellant. By their appeal, the award of the commissioners was superseded, and the power of the owner to enforce payment of compensation of his property, was suspended until the issue was tried and a new appraisement obtained by a jury. The trial of that issue the plaintiff would not have avoided if he had abandoned his own appeal. The act of the company in appealing, necessarily imposed the delay incident to a trial. Under such circumstances, the allowance of interest would be just and equitable."

20 C. J. 812, asserts the law to be:

"If the petitioner withdraws its appeal, interest should be allowed on the award from the date of its filing, but if the appeal by the owner is withdrawn he is not entitled to interest."

In Ross v. Railroad Company, 14 Wkly. N. C. 143, a case arising in the Court of Common Pleas of Pennsylvania, the matter came before the court upon a rule to confirm an award of viewers and enter judgment *nunc pro tunc*. There

certain property of the plaintiff had been taken by the Pennsylvania R. R. Co. for the use of the road, and the report of the viewers awarding damages for $64,000 was filed July 6, 1883. From this award plaintiff (the land owner) appealed, but subsequently withdrew the appeal on November 21, 1883, and the court was asked to have the judgment on the award entered as of July 6, 1883, with interest from that date. Defendant, the railroad company, objected to this, asserting that interest was only due from the date of withdrawal of the appeal. In disposing of the point the court said:

"The exceptant having taken an appeal put it out of the power of the railroad company to settle before November 21, when the appeal was withdrawn. This fact is conclusive, in our opinion, and we cannot enter judgment as of July 6.

"Rule discharged, and judgment entered as of November 21, 1883."

The case last mentioned, with another involving the same question—Donaldson v. Pennsylvania R. R. Co.—was carried by the land owner to the Supreme Court of Pennsylvania (15 Wkly. N. C. 312). The report of the proceedings there had presents the oral opinion of the presiding judge below in the other case, to the following effect:

"We think this order cannot be made, as the plaintiff, by appealing from the award, has interposed delay and prevented the defendants from tendering the money if they had been disposed to pay, and has taken away the ability to pay at an earlier day than December 4th, on which day the appeal was withdrawn, and that fact, of itself, is conclusive in our judgment against making the order prayed for as of the sixth day of July, 1883. We discharge this rule, and confirm the report as of this date."

Counsel for defendant in error in both cases argued that it could not be contended that,

"where the delay is occasioned by the act of one who is entitled to receive a liquidated sum, he can visit this penalty upon the other party who has not interposed any obstacle to the recovery, especially where the former, by appeal, suspends the entire proceedings at his own will, and finally, concluding that the chances of a higher award before some other tribunal are not so good as he at first supposed they were, withdraws his appeal. In view of the well-settled principles of law on this subject, such a proposition would be most unreasonable and unjust."

Substantially upholding this view and affirming the judgments below, the appellate court said:

"The plaintiff in each case appealed from the report of the viewers in favor of the appellant, and thereby prevented the sum awarded from ripening into a judgment. By the appeal the plaintiffs opened the whole case. On a trial in the Common Pleas, the measure of damages is in no manner controlled by the sum awarded by the viewers. (Lentz v. Lamplugh, 2 Jones, 344.) In the case cited it was said when a party appeals from an award in his favor he staked his whole case upon success before a jury, and gives up everything else for the chance of it. It is true that was under a different statute, but the reason applies with equal force to the present case. As then it was a case pending for unliquidated damages, the plaintiffs have no just cause of complaint, that the Court entered judgment for the sums specified as of the date of the judgment."

See also Reisner v. Union Depot and Railroad Co., 27 Kan. 382.

In the case at bar the commissioners' award was filed, as previously indicated, September 29, 1928. Defendants' demand for a jury was filed on October 25, 1928, and within the time fixed by law for doing so. This demand was not withdrawn by the defendants until April 7, 1930. Under the authorities cited above, defendants are not entitled to have interest on the award commence until the date of the withdrawal of their demand for a jury. Then and then

only, for the first time,—to use the language of this court in Wyoming Railway Co. v. Leiter, supra—the plaintiff knew the "amount defendants would be obliged to accept." By filing the demand for a jury, defendants put it out of the power of the plaintiff to pay the award. While plaintiff had given bond for the payment of such award as would be finally made, even a tender of the amount fixed by the commissioners prior to the withdrawal of the demand for a jury would have been useless. Defendants' filed demand was in effect a formal declaration to the court and to the plaintiff that they would not accept the award as made. Interest is allowed on money due and "withheld by unreasonable delay of payment" (W. C. S. 1920, § 4133, as amended by Laws of 1923, c. 34, § 4; Wyoming Railway Co. v. Leiter, supra), and not when a creditor declines to receive it.

Our conclusion is that the judgment of the District Court of Laramie County upon the award of the commissioners should be modified, by allowing interest on the sum of $9,000, at the legal rate, only from and after the 7th day of April, 1930, and, as so modified, it is affirmed.

*Modified and Affirmed.*

KIMBALL, C. J., and BLUME, J., concur.